Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiff
Viral DRM LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| VIRAL DRM LLC, | CASE NO.: 3:23-cv-05977 |
|---|---|
| Plaintiff, | **COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT, REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION, AND DMCA COUNTER-NOTICE MISREPRESENTATION IN VIOLATION OF U.S.C. § 512(f)** |
| v. | |
| THE YOUTUBE UPLOADERS LISTED ON SCHEDULE A, | |
| Defendants. | **(INJUNCTIVE RELIEF DEMANDED)** |

Plaintiff VIRAL DRM LLC by and through its undersigned counsel, hereby brings this Amended Complaint against Defendants THE YOUTUBE UPLOADERS LISTED ON SCHEDULE A for damages and injunctive relief, and in support thereof states as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this action for violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106, to copy and distribute plaintiff's original copyrighted works of authorship; for misrepresentation under 17 U.S.C. § 512(f) for the defendant's counternotification(s) referred to herein that are misleading and false; and for removal or alteration of copyright management information in violation of 17 U.S.C. § 1202.

## JURISDICTION AND VENUE

2. This is an action arising under the Copyright Act, 17 U.S.C. §§ 501, 512(f), 1202.

3.  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

4.  Defendants are subject to personal jurisdiction in California and jurisdiction is proper in this district court.

5.  Jurisdiction is proper in California because defendants are transacting business within California by using the YouTube platform that Google operates from within California to (a) commit acts of infringement, (b) profit from acts of infringement, (c) commit CMI violations, (d) profit from CMI violations, (e) submit false and bad faith put-back requests in violation of 17 U.S.C. § 512, and (f) profit from continued receipt of advertising revenue from videos restored by YouTube in response to defendants' false put-back requests.

6.  Jurisdiction is proper in California because defendants committed tortious acts within California on the YouTube platform that Google operates in California. Defendants: (a) committed acts of infringement alleged below in California on the YouTube platform, (b) committed CMI falsification and removal violations alleged below in California on the YouTube platform, and (c) submitted false and bad faith put-back requests alleged below in violation of 17 U.S.C. § 512 in California on the YouTube platform.

7.  Jurisdiction is proper in California because defendants caused plaintiff Viral DRM to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that the defendants' committed outside the state consisted of: (a) downloading plaintiff's copyrighted videos, (b) copying plaintiff's copyrighted videos, (c) editing and creating derivative works of plaintiff's copyrighted videos, and (d) removing and falsifying plaintiff's copyright management information. All these acts caused plaintiff to suffer tortious injury in California because after committing these acts, defendants then uploaded the infringing videos to YouTube and displayed/performed the infringing videos on the YouTube platform with false CMI or with CMI removed.

8.  Jurisdiction is also proper in this district court pursuant to 17 U.S.C. § 512(g)(3)(D) because defendants consented to the jurisdiction of this federal district court when it provided the

SRIPLAW
CALIFORNIA ♦ GEORGIA ♦ FLORIDA ♦ TENNESSEE ♦ NEW YORK

counternotifications attached hereto because the service provider provided with the counternotifications can be found in this judicial district, namely YouTube.

9. Defendants have sufficient minimum contacts with the state of California, there is a direct connection between the defendants' tortious acts and the state of California, and the exercise of personal jurisdiction over the defendants complies with the Due Process Clause of the United States Constitution.

10. Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, defendants engaged in infringement in this district, defendant are subject to personal jurisdiction in this district, and because defendants consented to this venue when defendants provided the counternotification(s) referred to herein because the service provider provided with the counternotification(s) can be found in this judicial district.

12. Defendants may be served by and through the email address listed in their counternotice and through the website that acted as its agent and defendant agreed to accept service of process through that website from plaintiff or an agent of plaintiff in the counternotification(s) pursuant to 17 U.S.C. § 512(g)(3)(D).

**PLAINTIFF**

13. Viral DRM is a Mississippi limited liability company.

14. Viral DRM is a syndicator of award-winning videographic content created by talented videographers who travel around the globe in pursuit of Mother Nature's wrath. Plaintiff's videographers and photographers cover weather extremes from tornadoes, hurricanes, flooding, blizzards, volcanoes and climate change impacts.

15. Plaintiff is affiliated with WXchasing LLC, a Mississippi limited liability company, and Live Storms Media LLC, an Alabama limited liability company. WXchasing is a video

3
COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT CASE NO.: 3:23-cv-05977

production company that creates some of the videographic Works that Viral DRM syndicates and licenses. Live Storms Media is a licensing broker of video content owned by or exclusively licensed to Viral DRM and WXchasing.

16. Plaintiff's videos of extreme weather events are frequently copied, downloaded, and reuploaded by infringers. Plaintiff is a popular and frequent source of footage of weather events that cannot be obtained elsewhere. This makes plaintiff a frequent target for infringers and pirates.

17. Both Live Storms Media and WXchasing operate popular and valuable YouTube channels on the YouTube platform. As of the filing of this Complaint:

   a. Live Storms Media had over 350,000 subscribers and 19,000 videos on its YouTube channel; the most popular Live Storms Media video had over 9 million views; and

   b. WXchasing had over 65,000 subscribers and 475 videos on its YouTube channel; the most popular WXchasing video had over 6.5 million views.

18. The Live Storms Media YouTube channel and the WXchasing YouTube channel are viewed by substantial numbers of California residents who also view advertising placed on the videos on those channels by YouTube.

19. When infringement occurs to Viral DRM's copyrighted Works Viral DRM is injured and damaged in California. When someone infringes on plaintiff's copyright like defendants did plaintiff loses out on potential sales or licensing revenue to other California businesses. When plaintiff's copyrighted work is infringed upon and widely distributed on YouTube without plaintiff's permission like defendants did, it damages plaintiff's reputation as a professional source of valuable extreme weather video content and makes it more difficult for plaintiff to negotiate valuable licenses from clients and potential clients in California in the future.

## GOOGLE LLC

20. YouTube is a video-sharing platform where users can watch, upload, and share videos. It is one of the most popular websites in the world, with over 2 billion active users.

21. YouTube is owned by Google LLC.

22. YouTube is headquartered in this judicial district.

23. YouTube's main business is advertising. It generates revenue by selling advertising space on its website and mobile apps. Advertisers can target their ads to specific demographics, interests, and even keywords. This allows them to reach their target audience with a high degree of accuracy. YouTube also earns revenue from its YouTube Premium subscription service. YouTube Premium members can watch videos without ads, download videos for offline viewing, and access YouTube Music Premium. In addition to advertising and subscriptions, YouTube also generates revenue from other sources, such as channel memberships.

24. YouTube is a very profitable business. In 2021, it generated $28.8 billion in revenue and $20.6 billion in profit. Some of the factors that have contributed to YouTube's success are:

 a. The large number of users: YouTube has over 2 billion active users worldwide.
 b. The high level of engagement: Users watch an average of 1 hour and 20 minutes of YouTube videos per day.
 c. The wide variety of content: YouTube offers a wide variety of content, from music videos to educational tutorials to funny cat videos.
 d. The ease of use: YouTube is easy to use and navigate.
 e. The monetization opportunities: YouTube offers a variety of ways for creators to monetize their content, such as through advertising, channel memberships, and Super Chat.

## DEFENDANTS

25. Defendants are YouTube uploaders with popular YouTube channels.

26. The defendants are individuals who are ascertainable but who are currently anonymous.

27. The true identities of the defendants will be obtained from Google, LLC pursuant to 17 U.S.C. § 512(h).

28. Defendants copied and downloaded plaintiff's copyrighted Works from YouTube.

29. After defendants downloaded plaintiff's Works, they edited the Works, removed plaintiff's copyright management information, and then uploaded infringing versions of plaintiff's Works to YouTube.

30. Defendants copied plaintiff's Works in order to advertise, market and promote their YouTube channels, grow their YouTube channel subscriber base, earn money from advertising to their YouTube subscribers, and engage in other money-making business activities using plaintiff's copyrighted media content.

31. Defendants committed the violations alleged in connection with defendants' businesses for purposes of advertising to the public, including YouTube viewers in California, in the course and scope of the defendants' business.

32. The YouTube and Google AdSense terms of service prohibit the defendants from engaging in the actions alleged herein. Specifically, the defendants agreed (1) they are not allowed to upload content that includes third-party intellectual property (such as copyrighted material) unless with permission from that party or are otherwise legally entitled to do so; (2) they are responsible for the content uploaded to YouTube, and may be liable for any copyright infringement claims that arise from your content; (3) YouTube may remove or disable access to any content that it believes infringes on someone else's copyright.

33. Attached hereto on Schedule A is a list showing the defendants' YouTube channel names, links to their channels, the number of subscribers, the number of videos, and the number of views for the defendants' most popular videos.

34. The defendants' YouTube channels are extremely popular and valuable.

35. The defendants' YouTube channels earn significant revenue from the performance and display of pirated video content.

36. The defendants monetized the videos they stole from Viral DRM. Monetizing videos on YouTube involves enabling advertisements to be displayed on your videos, which allows you to earn money through the YouTube Partner Program. The process works like this:

a. Eligibility: To monetize your videos, you need to meet certain eligibility criteria set by YouTube. You have to have at least 1,000 subscribers on your channel and a total of 4,000 watch hours in the past 12 months.

b. Joining the YouTube Partner Program: Once you meet the eligibility requirements, you can apply to join the YouTube Partner Program (YPP). This program allows you to monetize your videos by enabling ads on them. If your application is approved, you gain access to various monetization features.

c. Ad Formats: YouTube offers different ad formats that can appear on your videos, including pre-roll ads (shown before your video starts), mid-roll ads (shown during longer videos), and display ads (overlayed on the video or beside it). The specific types of ads displayed on your videos may depend on factors like the viewer's location and the advertiser's targeting preferences.

d. Revenue Sharing: When ads are displayed on your videos, you earn a portion of the revenue generated by those ads. The exact revenue split varies, but generally, creators receive around 55% of the ad revenue, while YouTube retains the remaining 45%. The revenue is based on factors such as the number of ad impressions, viewer engagement, and the advertisers' bidding.

e. AdSense Account: To receive payments for your YouTube earnings, you need to have an AdSense account linked to your YouTube channel. AdSense is a program by Google that allows publishers (in this case, YouTube creators) to earn money from ads. Once your AdSense account is set up and linked to your YouTube channel, you can manage your earnings and payment settings.

f. Payment Threshold: YouTube pays creators once they reach a payment threshold, which is typically $100. Once your earnings exceed this threshold, you become eligible for payment. YouTube offers various payment methods, such as direct deposit or wire transfer, depending on your country.

   g. Other Revenue Streams: While ad revenue is a significant way to monetize your YouTube channel, creators often explore other revenue streams as well. These can include brand partnerships, sponsorships, merchandise sales, crowdfunding, and more.

37. The defendants listed on Schedule A had access to and downloaded Viral DRM's copyrighted Works hosted by YouTube from Viral DRM's affiliated Live Storms Media YouTube channels or Facebook pages online.

38. Once downloaded, the defendants edited the pirated videos to remove or crop out plaintiff's proprietary watermarks and metadata. After editing the pirated videos, the defendants combined the plaintiff's videos with other video content that they either stole from others or created themselves and then reupload the resulting video to their YouTube channels and enabled advertising on them to earn monetization revenue.

## THE COPYRIGHTED WORKS AT ISSUE

39. Schedule A attached hereto contains the registration numbers of the copyright titles of the performing arts Works at issue in this case. Schedule A indicates whether each work was registered with the Copyright Office and provides the registration number if the work is registered. **Exhibit 2** contains the registration certificates for the Works at issue for the registered Works. To the extent that Schedule A indicates that a particular work is not registered, an infringement claim is not alleged as to that unregistered work.

40. At all relevant times, plaintiff was the exclusive licensee of the Works at issue in this case.

41. The authors of the Works at issue are listed in Schedule A along with the URLs where the Works can be found online.

## INFRINGEMENT BY DEFENDANTS

42. Defendants have never been licensed to use the Works at issue in this action for any purpose.

43. On a date after the Works listed in Schedule A at issue in this action were created, but prior to the filing of this action, defendants copied the Works and removed plaintiff's copyright management information from the Works.

44. Defendants copied the Works, publicly performed the Works, and made further copies and distributed the Works on the internet without plaintiff's or the authors' permission, and without plaintiff's copyright management information.

45. Prior to the filing of this action, on a date after the Works were registered if applicable, plaintiff discovered the unauthorized use of the Works by defendants.

## DMCA TAKEDOWNS AND DEFENDANTS' FALSE AND MISLEADING COUNTERNOTICES

46. Plaintiff notified YouTube and the defendants of the allegations set forth herein in DMCA notices.

47. Defendants responded to plaintiff's DMCA notices with the false and misleading counternotices.

48. The statements in the counternotices attached hereto are materially false and defendants lacked a subjective good faith belief in the false statements contained therein when they made the false statements.

## COUNT I - COPYRIGHT INFRINGEMENT

49. Plaintiff incorporates the allegations of paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. Plaintiff owns valid copyrights in the Works at issue listed on Schedule A.

51. Plaintiff registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a) as indicated on Schedule A.

52. Defendants copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without plaintiff's authorization in violation of 17 U.S.C. § 501 as indicated on Schedule A and in the DMCA notices attached hereto.

53. Defendants profited from the monetization of plaintiff's copyrighted content by placing advertising on the plaintiff's Works and those profits rightfully belong to plaintiff.

54. Defendants' acts were willful. Defendants' willfulness is demonstrated by their false and misleading counternotices and the false identifying information they provided online to shield their true identities from detection.

55. Plaintiff has been damaged.

56. The harm caused to plaintiff is irreparable.

### COUNT II - MISREPRESENTATION AND FRAUD UNDER 17 U.S.C. § 512

57. Plaintiff incorporates the allegations of paragraphs 1 through 48 of this Complaint as if fully set forth herein.

58. The allegations in this Count are alleged against defendants that responded to the plaintiff's DMCA notices with counternotices.

59. Plaintiff notified YouTube and defendants of the allegations set forth herein in DMCA notices, copies of which are annexed hereto as **Exhibit 3**.

60. Defendants responded to plaintiff's DMCA notices with false and misleading counternotices, true and correct copies of which are annexed hereto as **Exhibit 4**.

61. Defendants' statements in the counternotices were materially false and defendant lacked a subjective good faith belief in the false statements contained therein.

62. Defendants knowingly and materially misrepresented that its copies of plaintiff's Works were removed or disabled by mistake or misidentification.

63. Defendants knowingly and materially misrepresented their true identities in their false and misleading counternotices to shield their true identities from detection.

64. Plaintiff was injured by defendants' misrepresentation and counternotices.

65. Plaintiff will be injured by replacing the removed material or ceasing to disable access to it.

66. Defendants profited from the monetization of plaintiff's copyrighted content by placing advertising on the plaintiff's Works and those profits rightfully belong to plaintiff.

67. Defendants are liable for any damages, including costs and attorneys' fees, incurred by plaintiff.

68. The harm caused to plaintiff has been irreparable.

# COUNT III - REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

69. Plaintiff incorporates the allegations of paragraphs 1 through 48 of this Complaint as if fully set forth herein.

70. The Works at issue in this case set forth on Schedule A contained copyright management information ("CMI") consisting of watermarks identifying the Works as "NOT FOR BROADCAST" and the property of LIVE STORMS MEDIA or similar markings that plaintiff uses to identify and associate itself with its Works.

71. Defendants knowingly and with the intent to enable or facilitate copyright infringement, removed CMI from the Works at issue in this action in violation of 17 U.S.C. § 1202(b).

72. Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of plaintiff's rights in the Works at issue in this action protected under the Copyright Act.

73. Defendants caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of plaintiff's rights in the Works at issue in this action protected under the Copyright Act.

74. Plaintiff has been damaged.

75. The harm caused to plaintiff has been irreparable.

## COUNT IV - FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

76. Plaintiff incorporates the allegations of paragraphs 1 through 48 of this Complaint as if fully set forth herein.

77. Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false.

78. By uploading content to YouTube, defendants declared that they had the necessary rights or permissions to distribute and share that content.

79. Defendants' YouTube channels provided identifying information for defendants that was copyright management information and that falsely claimed ownership or rights in the Works

1  displayed there that was false and provided to induce, enable, facilitate or conceal infringement of
2  plaintiff's Works in violation of 17 U.S.C. § 1202(a).

3  80. In the defendants' counternotices to plaintiff's DMCA notices, defendants knowingly
4  and with the intent to enable or facilitate copyright infringement, falsely provided their own CMI in
5  violation of 17 U.S.C. § 1202(a).

6  81. Defendants caused, directed and authorized others to commit these acts knowing or
7  having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement
8  of plaintiff's rights in the Works at issue in this action protected under the Copyright Act.

9  82. Plaintiff has been damaged.

10 83. The harm caused to plaintiff has been irreparable.

11 WHEREFORE, plaintiff prays for judgment against the defendants that:

12 a. Defendants, their officers, agents, servants, employees, affiliated entities, and
13 all of those in active concert with them, be preliminarily and permanently enjoined from
14 committing the acts alleged herein in violation of 17 U.S.C. §§ 501, 1203;

15 b. Defendants be required to pay plaintiff's actual damages and defendants'
16 profits attributable to the infringement, or, at plaintiff's election, statutory damages, as
17 provided in 17 U.S.C. §§ 504, 512(f), and 1203;

18 c. Plaintiff be awarded its attorneys' fees and costs of suit under the applicable
19 statutes sued upon;

20 d. Plaintiff be awarded pre- and post-judgment interest; and

21 e. Plaintiff be awarded such other and further relief as the Court deems just and
22 proper.

### JURY DEMAND

23
24 Plaintiff hereby demands a trial by jury of all issues so triable.

25 DATED: November 17, 2023                    Respectfully submitted,
26
27                                             */s/ Matthew L. Rollin*
                                               MATTHEW L. ROLLIN
28                                             **SRIPLAW, P.A.**
                                               *Counsel for Plaintiff Viral DRM LLC*